UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------- X

UNITED STATES OF AMERICA,

    -v-

MUHAMMAD EJAZ AHMAD,
MUHAMMAD NAWAZ AHMAD, and
MOHAMMAD TANVEER,

                                        06 CRIM 1135 (JGK)

                Defendants              **DECLARATION**

------------------------------------------------------- X

      Jeffrey A. Granat Esq., hereby declares the following under Title 18 U.S.C. section 1746:

      1) I represent Dr. Muhammad Ejaz Ahmad. I submit this Declaration in support of my client's motion for: a) a change of venue to the Eastern District of New York; b) dismissal of the Indictment for failure to state an offense pursuant to Fed. R. Crim. P. 7(c)(1); c) alternatively, directing the Government to provide a Bill of Particulars pursuant to Fed. R. Crim. P. 7(f); and, d) suppressing all tangible evidence seized, or granting a pre-trial suppression hearing.

2) This Declaration is based upon information and belief the sources of which are conversations with my client Dr. Ahmad and review of the relevant court documents herein.

3) Dr. Ahmad is a licensed physician certified by the American Board of Internal Medicine. Upon receiving his medical degree, he became Chief Resident at Bronx Lebanon Hospital and at New York Hospital at Cornell. He currently operates his own medical practice at Al Shifa Medical Center located at 1121 Coney Island Avenue, Brooklyn, New York. He is the owner of that building which consists of his office premises and two apartments.

4) Codefendant Muhammad Nawaz Ahmad, my client's brother, is the co-owner of two pharmacies known as Stay Slim Pharmacy and ASA Drugs d/b/a Script Depot. Stay Slim Pharmacy is located at 1166 Coney Island Avenue in Brooklyn, and Script Depot is located at 99-06 63rd Road, Rego Park, New York. The other owner of these pharmacies, identified in the Indictment as "Individual-1," is Dr. Ahmad's wife. She also owns a third pharmacy named Nash Pharmacy located at 47-07 Francis Lewis Boulevard, Bayside, New York. Dr. Ahmad has no ownership interests in any of these pharmacies.

5) The third codefendant, Mohammad Tanveer, is my client's cousin and an employee at Nash Pharmacy.

6) On September 13th, 2006, pursuant to a search warrant, federal agents entered the Al Shifa Clinic and basically seized all of the documents and records in Dr. Ahmad's office. The undersigned has been advised that approximately 100 boxes of materials were seized as a result of this search. The prosecution has provided no index nor any description of the contents of these boxes of materials, nor any explanation as to which of these tens of thousands of documents relate to any of the charges in the Indictment, rendering preparation for this trial virtually impossible.

7) The three-count Indictment, moreover, is drawn in the vaguest and broadest of terms. It alleges that over a period of two years and eight months (January 2004 to August 29th, 2006), Dr. Ahmad conspired with Muhammad Nawaz Ahmad, and with Mohammad Tanveer (the two named codefendants) to commit: Count One, a kickback scheme in violation of 42 U.S.C. 1320a-7b(b)(2)(B); Count Two, health care fraud in violation of 18 U.S.C. 1349, and Count Three, aggravated identity theft in connection with the conspiracy to commit health care fraud as alleged in count two, in violation of 18 U.S.C. 1028A and 2.

8) Although the Indictment spans a period of two years and eight months, it alleges only a total of four overt acts. Two of these overt acts concern Dr. Ahmad and are alleged to have occurred on two consecutive days in December, 2005. In overt act "a," in Count One and repeated verbatim in Count Two, my client is claimed to have made a payment on December 22nd, 2005 of "a kickback of $40 to an undercover officer whom Ejaz Ahmad believed to be an HIV positive Medicaid patient in Brooklyn, New York." In overt act "b" again repeated verbatim in Count Two, Dr. Ahmad is claimed to have provided medications and a payment of, "a kickback of $40 to an undercover officer on December 23rd, 2005 whom Ejaz Ahmad believed to be an HIV positive Medicaid patient in Brooklyn, New York." In Count Three, alleging Aggravated Identity Theft from August 2004 to April 2005, Dr. Ahmad is accused of, "obtaining the names, dates of birth, and Medicaid numbers of numerous persons," and then "using that information in connection with the offense charged in Count Two."

## CHANGE OF VENUE

9) To begin, this motion seeks a change of venue to the Eastern District of New York under the "substantial contacts" test. (See <u>United States v. Saavedra,</u> 223 F.3d 85 (2d Cir. 2000) discussed in Memorandum of Law herewith). The primary locus of the alleged crimes is the Eastern District of

4

New York, as Dr. Ahmad's office and the three pharmacies in question are all located in the Eastern District of New York. Furthermore, the overwhelming majority of the alleged criminal acts occurred in the Eastern District of New York and the Eastern District of New York is the most effected district. The Southern District of New York is implicated in this case only by virtue of a few mailings of prescription drugs to addresses in Manhattan and the Bronx. Unless the Government can prove by a preponderance of the evidence that venue properly lies in the Southern District, the case should be transferred to the Eastern District.

## THE INDICTMENT IS FACIALLY INSUFFICIENT

10) Secondly, this motion seeks dismissal of the Indictment as facially insufficient. Contrary to common practice, the introductory paragraphs of the Indictment merely track the statutory language of the offenses charged. They are bereft of any background information, and of any factual allegations as to the means and methods of the two conspiracies. The Indictment fails to explain, even in the most general of terms, the nature of any conspiratorial agreement between the defendants, and the means by which they allegedly violated the cited statutes over a two year and eight month period. There is no allegation, for example, as to what was purportedly received by my client as a result of the payment of an alleged

5

kickback. There is no allegation, for example as what constitutes the claimed false or fraudulent representation to Medicaid, a necessary element of health care fraud under 18 U.S.C. 1347. The Indictment is also lacking any substantive charges paralleling the two conspiracy counts in Counts One and Two, rendering it that much more indecipherable.

11) For these reasons and those more fully set forth in the accompanying Memorandum of Law, the Indictment is so vague and threadbare as to render it facially insufficient for failure to state an offense. The Indictment should be dismissed, rather than amplified by a Bill of Particulars, because there is no assurance that the evidence presented to the Grand Jury included all the elements of the crimes charged, in violation of D. Ahmad's Fifth Amendment right not to be tried, "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." Russell v. United States, 369 U.S. 749 (1962).

## BILL OF PARTICULARS

12) Alternatively, the Government should be required to provide a Bill of Particulars as specified in the accompanying Memorandum of Law, without which Dr. Ahmad cannot prepare a defense and is at risk of double jeopardy.

## SUPPRESSION ISSUES

13) Furthermore, the search warrant issued for Dr. Ahmad's office at Al Shifa Medical Center located at 1121 Coney Island Avenue, Brooklyn, New York should be controverted and all seized items suppressed.[1] The warrant is overly broad and unsupported by probable cause insofar as it appears to cover every conceivable document, record, computer or computer part in Dr. Ahmad's office. While the top paragraph of Attachment A reads, "the following items which constitute evidence, instrumentalities, or fruits of health care fraud and illegal kickbacks to induce Medicaid business in violation of 18 U.S.C. 1347 and 42 U.S.C. 1320a-7(b)(2)(b)," the items themselves merely set forth an indiscriminate laundry list of papers and objects to be seized.

14) Items "a," "b," and "c" which are not limited by reference to "the scheme," as are the remaining items, cover: "prescriptions, patient drug profiles, prescription log books, records of prescription fills and refills, medical billing records, invoices of shipments to patients and orders from drug companies, calendars, appointment books, patient sign-in sheets,

---

[1] Copies of the warrants and supporting affidavits are provided to the Court as an appendix.

telephone logs and patient charts and records which might demonstrate when patients visited with or contacted the doctor for prescription medications." There is no language contained in items a, b, and c, specifying that only Medicaid patient files and records should be seized, or limiting the documents and records by date or pharmacy.

15) In the absence of a supporting affidavit alleging probable cause to believe that Dr. Ahmad's office was "permeated with fraud," what amounted to an "all-records" search and seizure of his office was unlawful. (See e.g. Nat'l City Trading Corp. v. United States, 635 F.2d 1020, 1026 (2d Cir. 1980)).

16) More specifically, the supporting affidavit is bereft of allegations that Dr. Ahmad's office was devoted entirely or even substantially to a fraudulent Medicaid practice. Upon information and belief, of Dr Ahmad's 4,000 patients, only approximately 1% were Medicaid customers at the three pharmacies in question. The executing officers, however, conducted what amounted to a general search and seizure of Dr. Ahmad's office contents. Taken indiscriminately were boxes of patient logs, all 4,000 patient files, personal billing records, receipts and records of payment from various health providers, billing documents, telephone documents, insurance documents, prescription medications, photographic identifications and correspondence.

17) All seized items should thus be suppressed. Alternatively, the undersigned requests a pre-trial suppression hearing.

WHEREFORE, for the reasons stated herein, and more fully set forth in the accompanying Memorandum of Law, the relief sought in the Notice of Motion should be granted, and such other and further relief as this Court deems just, fair and proper.

                                      Respectfully submitted,

                                      /s/
                                      Jeffrey A. Granat, Esq.
                                      Counsel for Muhammad Ejaz Ahmad
                                      Jacobson Goldberg & Kulb, LLP
                                      585 Stewart Avenue Suite 720
                                      Garden City, NY 11566
                                      (516)-222-2330

Dated:  February 8th, 2008
        Garden City, New York